Simon, J.
This is a petitory action. The plaintiff sets up title to a certain tract of land or plantation, together with the improvements thereon erected, situated at the English Turn, parish of Plaquemine, and known by the name of Woodville, being about 17 árpente front, on the river Mississippi, by 40 in depth, bounded above by the land of M’Millen and Roselius, and below by the land of Arneaux Lanneau, which plantation is his property, with the exception of six lots, each measuring 90 feet front, on the public road, by 180 feet in depth, and is the same which formerly belonged to the defendant, who, having become insolvent, surrendered it to his creditors, for whose benefit it was sold by their syndic, and adjudicated to Charles Patterson, through whom, by a regular chain of conveyances, the petitioner holds and owns the same.
He further states in his petition, that the defendant, pretending to have a claim to a part of the said plantation, has taken possession of a house and lot of ground situated thereon, which lot contains about three acres of ground, measuring about 150 feet front, on the public road, by about 250 deep, and situated between the petitioner’s house and the Woodville Coffee House, and to which said defendant sets up title as being his property, The petitioner prays, that his title to the property may be recognized *372 that a writ of possession issue; and that the defendant be condemned to pay him $1500 for rents and profits, &c.
The defendant in his answer pleads the general issue, except that he admits, that he is in possession of the lot described in the petition, and has been so for many years. He further denies, that the plaintiff has any title to said lot, and avers, that the same was formerly mortgaged to Madame Tremoulet for the sum of $500, &c.
Judgment was rendered below in favor of the plaintiff, for the lot of ground on which the defendant resides, together with the improvements, being the same lot described in the conveyance from the widow Tremoulet to the defendant, and allowing said plaintiff twelve dollars per month for rents and profits, from the date of judicial demand. After a vain attempt to obtain a new trial, the defendant has appealed.
The appellee has prayed in his answer, that the judgment appealed from be so amended, as to allow him to recover the whole tract of land claimed in his petition, with all the improvements thereon, &c.
It is a fixed and well settled principle of law, that in a petitory action, the plaintiff must make out his own title, and that otherwise, the possessor, tohoever he may be, shall be discharged from the demand ; (Code of Pract. art. 44. Civ. Code, art. 3417;)— and this court has often held, that in such an action, the defendant is not bound to show title, until the plaintiff has shown his; (8 Mart. N., S. 105 ;) — that even a plea of the defendant, that he has a better title to the property claimed, will not impair the force and effect of the general issue; (10 Mart. 293 ;) — that the plaintiff is bound to produce a title, as owner, causa idónea ad transferendum dominium, to repel the presumption of ownership, resulting from mere possession in his adversary; (8 La. 246 ;) — that such plaintiff can only recover on showing a valid title to the disputed premises in him,self; and that on his failure to do so, judgment must be for the defendant. 10 La. 351. 13 lb. 555.
Now, what title has the plaintiff shown to the property in dispute, which he alleges in his petition to be in the .possession of *373 the defendant, and which the latter admits in his answer, that he has possessed for many years ?
It appears, that in 1833, the defendant having become insolvent, made a cession of his property to his creditors, and that, among other articles surrendered for the payment of his debts, he abandoned “ a sugar 'plantation, situated at the English Turn, having 24 to 25 arpents front, on the river Mississippi, &c.” A short time afterwards, the property ceded was sold by the syndic of his creditors, and Charles Patterson became the purchaser of the insolvent’s plantation, with all the buildings, &c. thereon, described in the deed as measuring seventeen and three quarter arpents front, on the river, and running back to the depth of forty arpents, at which depth it has a breadth of six arpents, bounded below by land of A. Lanneau, and above by a tract of Pierre Lacoste ; and sold and fully guarantied, xoith the exception of twelve lots measuring each ninety feet front, on the river, by 180 feet in depth, as laid out on a plan of Woodville, which twelve lots are included in said tract, six of which are included in the sale, and are sold without any warranty whatever; the other six are claimed by other individuals, and are not included in the sale. The tract contains 400 superficial arpents, more or less, as per a plan drawn by Bringier, which was exhibited on the day of the sale, and is annexed in the margin thereof for reference.
In August, 1833, Charles Patterson sold the above described plantation to Maurice Cannon, according to the description given in the first deed, as containing 400 superficial arpents, more or less, ‘‘ with the exception of twelve lots measuring each 90 feet in front, on the river, by 180 feet in depth, as laid out on the plan of Woodville, which said lots are hereby reserved.” Thus, M. Cannon acquired none of the twelve lots, six of which remained the property of Charles Patterson, the original purchaser, so far only as his purchase might extend.
In March, 1S36, M. Cannon sold the same property to George Beauregard, with the same description, with the exception of the twelve lots originally reserved.
In February, 1837, Beauregard sold the plantation to D. M’- *374 Millen again, with the exception of the twelve lots “ not hereby-conveyed.”
In April, 1838, M’Millen sold the place to Rondeau, with the exception of a portion of land measuring two arpents front, on the river, adjoining the property of C. Lacoste, which portion had been previously conveyed by the vendor to C. M’Millen and C. Roselius, and also with the exception of the twelve lots reserved by the previous vendors.
' In September, 1838, Rondeau sold back the property to D. M’-Millen, with the same description and exceptions.
In April, 1840, M’Millen sold the plantation to George Beauregard, with the same description and exceptions; and on the 29th of January, 1841, Beauregard having sold to N. 0. Lane five arpents in front, of the whole tract, by twenty arpents in depth, as being a part of the plantation by him acquired from M’-Millen, he, Beauregard, conveyed the balance on the same day to Warren Stone, with the same description and exceptions.
In August, 1841, Lane acquired from Charles Patterson the latter’s right, title, interest, and claim of every bind or nature whatsoever, which he had, or may hereafter appear to- have, in and to any of the lots of the town of Woodville, as included in the adjudication made to him by the syndic of Forsyth’s creditors.
In October, 1842, Lane sold to plaintiff the five arpents in front by twenty in depth, which he had acquired from Beauregard, and his right and title to the lots transferred to him by Patterson ; and, in December following, Stone sold to plaintiff the balance of the plantation by him purchased from Beauregard, with the same description and exceptions.
Thus, it appears, that under the different conveyances first originating from Patterson, the plaintiff has acquired, and has shown himself vested with a title, which is the same title to the same property, (except the portion sold to M’Millen and Roselius,) which was conveyed to Patterson by the syndic of the defendant’s creditors, to wit: a plantation of seventeen arpents and f of an arpent front, on the river, and fully guarantied, with the exception of twelve lots, measuring each 90 feet by 180, as laid out on the plan of Woodville, six of which lots are included in *375 the sale, and the six other lots are not included in said sale, and are claimed by other individuals. Hence, the question occurs, is the property claimed in this suit included within the limits of the six lots sold with the plantation ; or does it make a part of the six lots which were not sold ? For if it is embraced or consists in one or more of the latter, it is clear the plaintiff has no title to it, and cannot recover.
The plan of the town of Woodville, alluded to in the deed from the syndic to Patterson, as being annexed thereto, and also mentioned in all the subsequent deeds, appears to have been lost or mislaid. It was not produced in evidence, and some of the witnesses say, that it is lost; but there is no evidence of any diligent search having been made for it. It may yet exist, and we consider it so material, that it would be difficult, if not impossible, to come to any final decision on the rights of the parties, unless the original, or a copy thereof, be procured, or some other legal means be resorted to, to ascertain the exact situation and location, in the town of Woodville, of the property in controversy.
The evidence shows further, that a survey of the town of Woodville was also drawn out by one of the witnesses, who, in his testimony, proceeds to give a description of the twelve lots on which the town is located, and of their extent; but the plat of survey was not produced, and as the proof of the location of the premises in dispute, within the limits of the six lots which were sold, or of the six ones which were not sold, is very uncertain and unsatisfactory; and as, although the plaintiff has made out a title to six of the lots, he has not satisfied us that the property claimed in this suit is within the boundaries of his purchase, we think justice requires, that this case should be remanded, for the purpose of ascertaining the exact location of the premises in dispute, either by a survey thereof, or by the production of the surveys heretofore made, and alluded to in the parol and written evidence, or by such other legal means and proof as the parties may think necessary to resort to upon this important part of their case. As it stands, we could not give any satisfactory answer to this material question of fact, upon which the case will perhaps ultimately turn.
With this view of the actual state of the case, it is unnecessary *376 for us to inquire into the title set up by the defendant, for, if it is not shown by the plaintiff that his title covers the premises in dispute, this alone will be sufficient to put an end to the controversy, and to reject his pretensions. Until then, the defendant, whose admission in his answer, that he is in possession of the lot described in the petition, cannot be construed as admitting that said lot is included within the limits of the property described in the plaintiff’s title deeds,'has nothing to show; as, according to the principles above recognized, it is the plaintiff’s duty to make out his title to the land in contest.
Hiestand, pro se.
Rawle, for the appellant.
With regard to the objections made by the plaintiff to the testimony of D. Saucier, Lanneau, and Cammack, admitted by the court, a qua, to prove facts going to identify the property in dispute, and to show its location, we think they were properly overruled. The evidence does not appear to be intended to show title by parol, but only to establish, that the land sued for does not form a part of the property conveyed by the syndic to Patterson, and is not included within its limits. This would have been more properly shown by a survey of the premises, and particularly by the plan annexed to the sale ; but, in its absence, we cannot say that the proof was inadmissible.
It is, therefore, ordered and decreed, that the judgment of the District Court be avoided and reversed, and that this case be remanded to the lower court for a new trial, for the purposes expressed in this opinion; the appellee paying the costs of this appeal.