## W. S. Grayson *v.* Elisha Whatley, Administrator.

A contract to run a horse race is not prohibited by law, and money lost on such a race may be recovered by action in the courts. But such a contracts, although permitted, are regarded with suspicion by the law, and the Judge is authorized to reject the entire demand, when the same appears to him excessive.

The obligation arising out of a contract to run a horse race, is hereditable between the heirs of the contracting parties.

In all aleatory contracts permitted by our law, under Art. 2952 of the Civil Code, the personal qualities of the contracting parties must, more or less, form a material part of the motive to the contract, and the contract is not therefore asignable by one of the parties, without the consent of the other.

APPEAL from the District Court of the Parish of Franklin, *Mayo,* J.
*Morrison & Purvis,* and *Harper & Whyte,* for plaintiff and appellant. *C. E. Ramage,* and *T. S. & J. H. Crawford,* for defendant.

LAND, J. The facts of this case, as stated by the District Judge, are as follows :

*Jordan W. Whatley,* now deceased, and *J. S. Reed,* made a bet of five hundred dollars on the result of a horse race to be run at a future day. Each executed his promissory note in favor of the other, for five hundred dollars, as a forfeit in case either failed to fulfill his part of the contract. These notes were placed in the hands of a stake holder. *Jordan W. Whatley* soon after died, and *Reed* being desirous of drawing the bet, with that view applied to the relatives of *Whatley,* and among others to *Elisha Whatley,* the present defendant. A time was agreed upon for meeting the stake-holder and withdrawing the notes put up as a forfeit ; but, for some reason not disclosed, this was never done. Ten or twelve days before the time fixed for the race, *J. S. Reed* sold his interest in, and incidental to the race, to the plaintiff, *Grayson,* for the price of fifty dollars.

On the day fixed for the race, *Reed* and *Grayson* appeared on the course, with the horse *Reed* was to have run. The horse was then run over the course the specified distance of six hundred yards by *Grayson,* and as no person appeared representing *Jordan W. Whatley,* the stake-holder delivered over the note he had executed, as a forfeit, to *Grayson,* who claimed it, as the assignee of *Reed.*

On these facts, the District Judge rendered a judgment in favor of the plaintiff for fifty dollars, from which he has appealed, and urges in this court his right to a judgment for the full amount of the note.

The defendant is likewise dissatisfied with the judgment, and in his answer to the appeal has prayed for its amendment and the rejection of the plaintiff's entire demand.

It is true, that a contract to run a horse race is not prohibited by law, and that money lost on a race may be recovered by action in the courts. But such contracts, although permitted, are regarded with suspicion by the law, and the Judge is authorized to reject the entire demand, when the same appears to him excessive. C. C. 2952.

The defendant contends in his pleadings, that the plaintiff has no right of action, for the reason, that the obligation arising out of the contract to run the horse race *was strictly personal in its nature,* and does not bind the heirs or legal representatives of the obligor, for its performance. This position is not, perhaps, sustainable on legal principles, so far as it denies the obligation of such a con-

tract, to be heritable as between the heirs of the contracting parties. But it is the opinion of the court, that the obligation to run a horse race, is a personal obligation, in a sense different from the technical signification of the term, that is to say, that the obligation to run a horse race is so far personal to the contracting parties, that it cannot be transferred or assigned to a third person, by one of them, without the consent of the other.

In all aleatory contracts, permitted by our law, under Article 2952 of the Civil Code, the personal qualities of the contracting parties must, more or less, form a material part of the motive to the contract, and for this reason, the contract is not assignable by one of the parties, without the consent of the other.

In the case before us, there is nothing to show that *Jordan W. Whatley* consented to the assignment made to the plaintiff, *Grayson*, by *Reed*, the contracting party. On the contrary, the assignment was made after *J. W. Whatley's* death, and for the consideration of fifty dollars only, when it was evident that the race would not, in fact, be run at all.

For the reasons stated, it is ordered, adjudged and decreed, that the judgment of the lower court be reversed; and it is now ordered, adjudged and decreed, that there be judgment in favor of the defendant, with costs in both courts.